UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-01399-JAK (RAOx) | Date | March 31, 2026 |
| Title | George Zammar Yakoub v. D. Marin, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| M. Lindaya | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. 2)**

## I. Introduction

On March 23, 2026, George Zammar Yakoub ("Petitioner"), a Syrian citizen and national who is detained in immigration custody, filed a petition for writ of habeas corpus. Dkt. 1 ("Petition"). That same day, Petitioner filed a Motion for Temporary Restraining Order. Dkt. 2 ("Motion"). Through the Motion, Petitioner seeks release from immigration detention and an injunction barring Respondents from removing him to a country other than Syria, *i.e.*, removal to a "third country." *Id.* at 4. On March 24, 2026, an order issued barring Respondents from transferring Petitioner, except to a facility within the Central District of California, until further order of the Court. Dkt. 7.

Respondents initially filed a notice of non-opposition to the Motion on March 27, 2026. Dkt. 10 ("Notice"). Through the Notice, Respondents represented that they were "not submitting an opposition" to the Motion. *Id.* at 2. Later that day, Respondents withdrew the Notice, and filed an opposition to the Motion. Dkts. 11, 12. Based on a review of the briefing, it has been determined that this matter can be decided without oral argument and is taken under submission pursuant to Local Rule 7-15.

For the reasons stated in this Order, the Motion is **GRANTED IN PART**.

## II. Background

As noted, Petitioner is a citizen and national of Syria. Dkt. 1 ¶ 31; Dkt. 12-1 ¶ 4. He first entered the United States in 2002 on a B2 nonimmigrant tourist visa. Dkt. 12-1 ¶ 5; *see also* Dkt. 1 ¶ 32. He alleges that he has resided in the United States since then, Dkt. 1 ¶ 31, and that his wife and daughter are United States citizens. *Id.* ¶ 33.

On June 8, 2011, Immigration and Customs Enforcement ("ICE") charged Petitioner with removability pursuant to 8 U.S.C. § 1227(a)(1)(B). Dkt. 12-1 ¶ 21. Petitioner, however, was granted asylum by an Immigration Judge ("IJ") on August 26, 2011. *Id.* ¶ 22.

According to Respondents, Petitioner has been convicted of several state criminal offenses, including the following: (1) February 16, 2010 conviction for trespass, resulting in an 18-day jail sentence and 36 months of probation; (2) February 19, 2010 conviction for driving without a license, resulting in a 24-day

jail sentence and 24 months of probation; (3) May 25, 2011 convictions for possession of a controlled substance and driving without a license, resulting in a 15-day jail sentence and 36 months of probation; (4) May 25, 2011 conviction for use of an access account without consent, resulting in a two-day jail sentence and 36 months of probation; (5) June 6, 2011 conviction for theft, resulting in a 60-day jail sentence and 36 months of probation; (6) August 31, 2012 conviction for grand theft, resulting in a 16-month jail sentence; (7) June 7, 2012 conviction for possession of a controlled substance, theft, and vandalism, resulting in a 16-month jail sentence; (8) August 12, 2014 conviction for possession of a controlled substance, resulting in a 16-month jail sentence; (9) June 5, 2014 conviction for taking a vehicle without its owner's consent, resulting in a 208-day jail sentence and 36 months of probation; (10) January 13, 2017 conviction for possession of a controlled substance for sale, resulting in a 4-year prison sentence and 36 months of probation; (11) March 30, 2021 conviction for grand theft, resulting in a 2-year jail sentence and a 20-month suspended sentence; and (12) April 7, 2022 conviction for possession of a driver's license with intent to commit forgery, resulting in a 40-day jail sentence and a 40-month suspended sentence. *Id.* ¶¶ 7–18.

Based on certain of Petitioner's convictions, "a motion to reopen was filed and granted" in his underlying immigration proceedings on November 25, 2014. *Id.* ¶ 24.[1] Petitioner was then ordered removed by an IJ on May 13, 2015. *Id.* ¶ 25. Petitioner was also granted a deferral of removal[2] to Syria under the Convention Against Torture ("CAT"). *Id.* Following the issuance of his final removal order, Petitioner was detained for approximately five months. Dkt. 1 ¶¶ 34–35; Dkt. 12 at 3 ("[P]er his allegations, Petitioner was previously detained for five months under § 1231(a) for enforcing his final removal order."). Following that initial detention, Petitioner was released from custody on an Order of Supervision ("OSUP") because the government was not able to "procure travel documents for" his "repatriation to Syria . . . ." Dkt. 2 ¶¶ 5–6. Petitioner contends that Syria and the United States do not have diplomatic relations or repatriation agreements. Dkt. 1 ¶ 36–37.

Since his release, Petitioner alleges that he has "complied with all conditions" of the OSUP, including periodic check-ins with Immigration and Customs Enforcement ("ICE"). *Id.* ¶ 39. According to Petitioner, "no circumstances have changed" since the issuance of the OSUP as to his dangerousness or risk of flight. *Id.* Petitioner does not, however, address his several criminal convictions that occurred while he was subject to the OSUP. Moreover, Petitioner does not address the circumstances that led to his recent detention by Respondents.

According to Respondents, Petitioner was arrested by the San Bernardino County Sheriff on March 10, 2026, and charged with possessing a stolen vehicle, owning a chop shop, and taking a vehicle without its owner's consent. Dkt. 12-1 ¶ 19. Following his arrest, ICE conducted a "targeted enforcement

---

[1] Asylum may be terminated based on a conviction for an "aggravated felony." 8 U.S.C. §§ 1158(b), (c). After being granted asylum, Petitioner appears to have been convicted of several "aggravated felonies" within the meaning of the Immigration and Nationality Act. *See, e.g.*, 8 U.S.C. § 1101(a)(43)(G) (theft offenses with at least one year custodial sentence constitute aggravated felonies).

[2] "Deferral of removal" is a remedy available under CAT if the noncitizen is "more likely than not to be tortured" if removed to a particular country. 8 C.F.R. § 1208.17(a). As the Ninth Circuit has explained, this remedy is similar to a "withholding of removal" under CAT, except that withholding of removal "may not be granted if the [noncitizen] has been convicted of a 'particularly serious crime.'" *Maldonado v. Lynch*, 786 F.3d 1155, 1162 n.7 (9th Cir. 2015) (quoting 8 C.F.R. § 1208.16(d)(2)).

operation" at the San Bernardino County Jail on March 11, 2026. *Id.* ¶¶ 26–27. There, agents observed a "male matching the physical appearance and description" of Petitioner departing the facility. *Id.* ¶ 27. ICE agents then arrested Petitioner. *Id.* Petitioner states that, "on the date of [his] last arrest ICE officers revoked" his OSUP. Dkt. 1 ¶ 43. Petitioner also states that an ICE agent told him that the agent "believed," but was "not sure" whether a travel document for his removal could be obtained. *Id.*

Petitioner remains detained at the Adelanto ICE Processing Center. Dkt. 12-1 ¶ 28. According to a declaration from an ICE deportation officer, Respondents are "actively working on a Third Country Removal" for Petitioner, *i.e.*, removal to a country other than Syria. *Id.* ¶ 29.

## III. <u>Analysis</u>

### A. Legal Standards

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Rule 65(b) sets forth the standards for the issuance of a TRO. Fed. R. Civ. P. 65(b). They are fundamentally the same as those that apply to a request for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In determining whether to grant such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). The moving party has the burden of persuasion. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006).

To obtain either a TRO or a preliminary injunction, the moving party must show the following: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of immediate or prompt relief; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Where the non-moving party is a government entity, "the third and fourth factors . . . 'merge.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The Ninth Circuit applies a "sliding scale" approach to the requirements necessary for interim injunctive relief. Accordingly, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Pimental v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Likelihood of success on the merits is "the most important factor" in determining whether interim, injunctive relief is warranted. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 990 (9th Cir. 2020). If the moving party fails to show a likelihood of success on the merits, the court "need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

Alternatively, where a plaintiff establishes "serious questions going to the merits," and demonstrates "a balance of hardships that tips sharply towards the plaintiff," a TRO or preliminary injunction may be warranted "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Cottrell*, 632 F.3d at 1135. *Cottrell* determined that this "serious

questions" test, which requires a lesser showing as to success on the merits than the "likelihood of success" test, continues to apply following *Winter* when two conditions are met. *First*, the balancing of the equities must tip "sharply" in favor of movant. *Id. Second*, the other *Winter* factors—irreparable harm and the public interest—must be established. *See Farris v. Seabrook*, 677 F.3d 858, 864-65 (9th Cir. 2012).

B. Application

Construing Petitioner's pleadings liberally because he has proceeded as a self-represented litigant,[3] *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), Petitioner contends that his detention is unlawful on two grounds: (1) his prolonged detention violates his substantive due process rights under the Fifth Amendment and *Zadvydas v. Davis*, 533 U.S. 678 (2001) because his removal is not reasonably foreseeable, Dkt. 1 ¶¶ 63–67; and (2) his re-detention violates his procedural due process rights because Respondents violated their own regulations governing the revocation of Petitioner's OSUP, *id.* ¶¶ 68–83.[4] Petitioner seeks a TRO that would require Respondents to release him from custody, and an injunction barring Respondents from removing him to a third country.[5] Dkt. 2 at 4.

1. <u>Likelihood of Success on the Merits</u>

Once an order of removal becomes final, the government "shall" remove the noncitizen "from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). During this initial "removal period," the government "shall detain the [noncitizen]" for up to 90 days. *Id.* § 1231(a)(2). If the noncitizen "does not leave or is not removed within the removal period," the government must release the noncitizen under conditions of supervision. *See id.* § 1231(a)(3); 8 C.F.R. § 241.5 (conditions for release after removal period). However, for persons detainable "beyond the removal period" under 8 U.S.C. § 1231(a)(6) -- which includes noncitizens convicted of certain crimes, including aggravated felonies, 8 U.S.C. § 1227(a)(2)(A)(iii) -- the statutory text includes no express limit on the length of detention. *See* 8 U.S.C. § 1231(a)(6) (permitting detention "beyond the removal period" for certain categories of individuals).

*Zadvydas v. Davis*, 533 U.S. 678 (2001) addressed whether § 1231(a)(6) authorizes the indefinite detention of noncitizens. The Court first observed that any statute that did so "would raise a serious constitutional problem" under the substantive component of the Due Process Clause to the Fifth Amendment. *Id.* at 690. To avoid that constitutional problem, the Court held, as a matter of statutory interpretation, that § 1231(a)(6) contains an "implicit limitation" on post-removal detention. *Id.* at 689.

---

[3] Magistrate Judge Oliver referred Petitioner's motion for appointment of counsel, Dkt. 3, to the Federal Public Defender for its consideration. Dkt. 8. On March 31, 2026, Deputy Public Defender Pablo Almazan entered an appearance on behalf of Petitioner. Dkt. 13.
[4] Because Petitioner's substantive due process claim has merit, Petitioner's procedural due process claim is not addressed.
[5] The Petition does not advance any claims concerning third country removal. Similarly, the Motion does not present any argument in support of Petitioner's request to enjoin his removal to a third country. "While the courts liberally construe pro se pleadings as a matter of course, judges are not also required to construct a party's legal arguments for him." *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993) (citation omitted). Because Petitioner has not shown that injunctive relief is warranted concerning his removal to a country other than Syria, the request to enjoin removal to a third country is denied without prejudice to its renewal should a third country be identified.

Such detention, the Court held, may only last for a "period reasonably necessary to bring about" the detainee's removal from the United States." *Id.* "[F]or the sake of uniform administration in the federal courts," the Court also established that a period of detention of six months to effectuate a removal order is "presumptively reasonable." *Id.* at 701. After that period, if the detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Respondents concede that "Petitioner has a due process remedy" for prolonged detention under *Zadvydas* "after six months of detention." Dkt. 12 at 3. They argue, however, that his *Zadvydas* claim has not "accrue[d]" because he has "currently been detained less than the six-month period." Dkt. 12 at 3.

After his final removal order issued in 2015, it is undisputed that Petitioner was initially detained for "approximately" five months, and has now been re-detained for about three weeks*, i.e.,* since March 11, 2026. Courts interpreting *Zadvydas* have held that "the six-month period does not reset when the government detains a[] [noncitizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." *Sied v. Nielsen*, No. 17-CV-6785, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases); *see also Siguenza v. Moniz*, No. 25-CV-11914, 2025 WL 2734704, at *3 (D. Mass. Sep. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them."). This principle is adopted here.

Because Petitioner states only that he was detained for "approximately" five months following his order of removal -- and Respondents have not proffered any evidence or made any statement as to the precise length of Petitioner's total detention -- it is unclear whether the six-month *Zadvydas* period has elapsed. For example, if Petitioner's initial detention was exactly five months, Petitioner would be approximately ten days away from completing six cumulative months in custody. Moreover, if Petitioner's cumulative detention has not exceeded six months, it is reasonable to expect that Respondents -- who have exclusive control over and access to the detention records of persons held in immigration detention -- could have proffered evidence showing that is the case.

Thus, on the limited factual record proffered by the parties, Petitioner has shown only that his cumulative detention is in close proximity to the six-month *Zadvydas* threshold -- not that the six-month period has been met or exceeded.[6] Because the precise length of Petitioner's detention has not been

---

[6] Assuming, *arguendo*, that Petitioner's detention is just shy of the *Zadvydas* six-month period, that does not necessarily preclude relief. The *Zadvydas* six-month presumption is not a "prohibition on claims challenging detention less than six months." *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018). Although the Ninth Circuit has not decided whether detention may be challenged before the six-month threshold has been reached, most courts within this District, and many district courts within the Ninth Circuit, have interpreted *Zadvydas* to permit such challenges. *See Manoukuyan v. Lyons*, No. 26-CV-524, 2026 WL 712221, at *5 (C.D. Cal. Mar. 4, 2026) (collecting cases); *see also, e.g.*, *Wana v. Bondi*, No. 25-CV-02321, 2025 WL 3628634, at *3–4 (W.D. Wash. Dec. 15, 2025) (although four-month detention was "presumptively reasonable" under *Zadvydas*, release was appropriate because the government "made no effort to apply for or obtain travel documents prior to taking [the petitioner] into custody, and there is no indication that they have yet contacted the government of Vietnam to ascertain its willingness to accept [the petitioner]" and evidence suggested that Vietnam would not

presented by the parties, the relief granted through this Order will be stayed for 14 days. By that time, based on the information that has been presented, it is reasonable to find that Petitioner will have been detained for a cumulative period of more than six months, which would make his detention presumptively unreasonable under *Zadvydas*.

Petitioner has also "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner contends, and Respondents do not dispute, that ICE has "not secured travel document[s] necessary for removal" despite attempts to do so since Petitioner was ordered removed and detained in 2015. Dkt. 1 ¶ 45; Dkt. 2 ¶¶ 14–18. Consequently, under *Zadvydas*, in connection with whether prolonged detention is justified, the burden shifts to Respondents to demonstrate that Petitioner's removal is foreseeable and imminent. *Zadvydas*, 533 U.S. at 701.

Respondents represent that they do not "intend to remove [Petitioner] to Syria" -- perhaps because doing so would be inconsistent with the prior order of the IJ that deferred removal to Syria -- and instead, are solely pursuing third country removal. Dkt. 12 at 3. With respect to any removal process, the only relevant evidence proffered by Respondents is a conclusory statement by an ICE deportation officer that Respondents are "actively working" on third country removal. Dkt. 12-1 ¶ 29. Respondents have not identified a third country with which there have been communications as to the deportation of Petitioner. Nor have they made any representation as to the expected date by which they will receive the necessary travel documents for the deportation of Petitioner to that country. Similarly, Respondents have not provided any information as to whether any travel arrangements have been made for Petitioner's removal to that country.

In third country removal cases, "removal cannot be deemed as likely to occur in the reasonably foreseeable future if the government cannot identify a country that will accept the noncitizen." *L.R. v. Noem*, __ F. Supp. 3d __, No. 25-CV-2019, 2026 WL 161605, at *10 (D. Nev. Jan. 21, 2026). "Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025); *see also Jaranow v. Bondi*, __ F. Supp. 3d __, No. 25-CV-2396, 2026 WL 35864, at *4 (W.D. Wash. Jan. 6, 2026) (rejecting the argument that removal is reasonably foreseeable based on the government's "working" to obtain travel documents). For that reason, the cases cited by Respondents are distinguishable. Dkt. 12 at 4 (first citing *Malkandi v. Mukasey*, No. 07-CV-1858, 2008 WL 916974, at *1 (W.D. Wash. Apr. 2, 2008) (removal was foreseeable because travel document was issued); then citing *Nicia v. ICE Field Off. Dir.*, No. 13-CV-92, 2013 WL 2319402, at *3 (W.D. Wash. May 28, 2013) (the record disclosed "no reason to believe" that removal to home country was not foreseeable); and then citing *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) (removal

---

accept the petitioner). Although detention may be "presumptively" reasonable before it reaches the six-month mark under *Zadvydas*, that presumption is not a bright-line and may be rebutted by a showing that removal is "not reasonably foreseeable." *Zadvydas*, 533 U.S. at 699–700; *see also Clark v. Martinez*, 543 U.S. 371, 384 (2005) ("We also reject the Government's argument that, under *Zadvydas*, § 1231(a)(6) authorizes detention until it approaches constitutional limits. The Government provides no citation to support that description of the case—and none exists. *Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits . . . ." (citation modified)).

was foreseeable because "[t]here is no evidence, for example, that Senegal would refuse to accept him, or that his removal is barred by our own laws"). Therefore, based on the current factual record, Respondents have not proffered sufficient evidence to show that Petitioner is likely to be removed in the reasonably foreseeable future.

Finally, Respondents do not expressly argue that Petitioner's continued detention is necessary and appropriate based on public safety concerns in light of his substantial criminal record, including the recent charges that precipitated his detention by Respondents, or based on an alleged violation of the terms of his OSUP. Under binding Supreme Court and Ninth Circuit precedent, a noncitizen's danger to the community is not material in the *Zadvydas* analysis. *Zadvydas* itself involved two noncitizens who clearly posed a risk of danger to the community: Kestutis Zadvydas, who had "a long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft" and "a history of flight," and Kim Ho Ma, who had been "involved in a gang-related shooting" and "convicted of manslaughter." 533 U.S. at 684–85. Thus, *Zadvydas* "held that § 1231(a)(6) simply did not authorize a[] [noncitizen's] potentially indefinite detention, even if such detention were premised on 'protecting the community from dangerous [noncitizens].'" *Tuan Thai v. Ashcroft*, 366 F.3d 790, 797 (9th Cir. 2004) (quoting *Zadvydas*, 533 U.S. at 697); *see also Zadvydas*, 533 U.S. at 708 (Kennedy, J., dissenting) ("Under the majority's view . . . it appears the alien must be released in six months even if presenting a real danger to the community."). The Ninth Circuit has also held that a noncitizen's "ill mental health coupled with dangerousness cannot justify indefinite detention when dangerousness alone cannot justify such detention." *Id.* at 798. "The *Zadvydas* court makes clear that there is but one method for overcoming the six-month presumption: the government must furnish evidence which shows that there is significant likelihood of removal in the foreseeable future." *Ha Tran v. Mukasey*, 515 F.3d 478, 484 n.4 (5th Cir. 2008).

Based on the current record, Respondents have failed to demonstrate when Petitioner's forthcoming removal will occur or that it is in the foreseeable future. Therefore, under *Zadvydas*, Petitioner's criminal history and the corresponding potential danger he presents to the community cannot justify his prolonged detention. As *Zadvydas* observed, public safety concerns can be addressed through appropriate conditions of supervision, rather than prolonged detention. *See Zadvydas*, 533 U.S. at 700 ("[O]f course, the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions."); *id.* at 696 ("The choice, however, is not between imprisonment and the [noncitizen] living at large. It is between imprisonment and supervision under release conditions that may not be violated." (citation modified)). Indeed, if Petitioner violates such conditions, he may be subject to criminal prosecution and penalties, including further detention. *See* 8 U.S.C. § 1253(b) (willful failure to comply with terms of release of supervision is subject to imprisonment less than one year); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions."). Further, as noted, Respondents contend that Petitioner was arrested on March 10, 2026, and charged with possessing a stolen vehicle, owning a chop shop, and taking a vehicle without its owner's consent. Dkt. 12-1 ¶ 19. If that arrest has resulted in corresponding state criminal proceedings, the prosecutors could initiate proceedings seeking Petitioner's pretrial detention.

Because Respondents have not shown that removal is reasonably foreseeable, based on the current record, Petitioner is likely to succeed on the merits of his substantive due process claim to the extent that his detention exceeds the six-month threshold under *Zadvydas v. Davis*, 533 U.S. 678 (2001). As noted, this Order, and the injunctive relief ordered herein, will be stayed for 14 days so that it can be reasonably determined that the six-month detention period will have accrued. Further, Respondents may submit supplemental evidence, within ten days of the issuance of this Order, seeking to demonstrate that Petitioner's removal is likely to occur in the reasonably foreseeable future under *Zadvydas*. If such evidence is proffered, it will be considered in determining whether Petitioner will be permitted to file a supplemental brief, and as part of a determination whether the stay of this Order should be extended or if the Order will be modified.

2. <u>Irreparable Harm</u>

It is well established that unlawful detention constitutes irreparable harm. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Ninth Circuit has also identified "irreparable harms imposed on anyone subject to immigration detention," including less access to medical and psychiatric care in detention facilities, economic burdens on detainees and their families, harms to children whose parents are detained, and mental health problems resulting from detention. *Hernandez*, 872 F.3d at 995.

Based on the foregoing, this factor also supports the issuance of a TRO.

3. <u>Balance of Equities and the Public Interest</u>

The balance of equities and public interest factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken*, 556 U.S. at 435). "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). This is because "it is always in the public interest to prevent the violation of a party's constitutional rights" and "[t]he government . . . cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Id.* (first quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022); and then quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)). Additionally, in cases of removal, "there is a public interest in preventing aliens from being wrongfully removed." *Nken*, 556 U.S. at 436. In short, it is not "equitable or in the public's interest to allow . . . [violation of] the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Valle del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013)).

Because the present record shows that, subject to the 14-day stay of this Order, Petitioner is likely to succeed on his substantive due process claim, this factor supports the issuance of a TRO.

* * *

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-01399-JAK (RAOx) | Date | March 31, 2026 |
| Title | George Zammar Yakoub v. D. Marin, et al. | | |

Because a review of the *Winter* factors supports granting certain of the requested relief, it is unnecessary to conduct an analysis under *Cottrell.*

C. No Bond Is Necessary

Fed. R. Civ. P. 65(c) requires that, prior to granting injunctive relief, a movant pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).

No bond is required under the circumstances of this case. It has not been shown that Respondents will incur any significant cost due to the relief that has been ordered, and requiring a bond "would have a negative impact on [Petitioner's] constitutional rights, as well as the constitutional rights of other members of the public affected by the policy." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996).

## IV. Conclusion

For the reasons stated in this Order, the Motion is **GRANTED IN PART**, as follows.

Respondents, their agents, officers, employees, attorneys, and all persons acting in concert with Respondents are **ORDERED** to release Petitioner from custody within 14 days of the issuance of this Order, subject to the prior terms and conditions of his OSUP, and are **ENJOINED** from re-detaining Petitioner without complying with the relevant regulations governing the revocation of an OSUP based on changed circumstances. *See* 8 C.F.R. § 241.13.

This Order and the corresponding injunctive relief is **STAYED** for 14 days. Respondents may submit supplemental evidence, within ten days of the issuance of this Order, seeking to demonstrate that Petitioner's removal is likely to occur in the reasonably foreseeable future. If such evidence is proffered, it will be considered in determining whether Petitioner will be permitted to file a supplemental brief, and as part of a determination whether the stay of this Order will be extended or if the Order will be modified. If Respondents do not proffer supplemental evidence, the stay will end 14 days following the issuance of this Order and the corresponding injunctive relief will take immediate effect without further order of the Court.

Petitioner's request for an injunction barring his removal to a third country is **DENIED** without prejudice.

/ / /

/ / /

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-01399-JAK (RAOx) | Date | March 31, 2026 |
| Title | George Zammar Yakoub v. D. Marin, et al. | | |

The March 24, 2026 Order, Dkt. 7, which barred Respondents from transferring Petitioner, except to a facility within this District, until further order of the Court remains in place until a final determination is made on whether the stay of this Order will be extended or if this Order will be modified.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer LC3